UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CURTIS SIMMONS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 06-4237** |
| | * | |
| **TRANSOCEAN OFFSHORE DEEPWATER** | * | |
| **DRILLING, INC.** | * | **SECTION: "L" (5)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. BACKGROUND

This cases arises out of injuries allegedly sustained by Plaintiff Curtis Simmons (the "Plaintiff") on or about June 2, 2005 while he was employed as a roustabout on the M/V TRANSOCEAN MARIANIS, a submersible drilling rig.

This matter came before the Court for trial without jury. After a review of the evidence presented at trial, including witness testimony and exhibits entered into the record, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that a Finding of Fact constitutes a Conclusion of Law, the Court adopts it as such. And to the extent that a Conclusion of Law constitutes a Finding of Fact, the Court also adopts that assumption.

### II. FINDINGS OF FACT

(1)

Plaintiff Curtis Simmons is an individual of the age of majority and a resident of Mississippi. The Plaintiff graduated from high school and received average grades. In the mid-

1990s, Plaintiff attended Jones Community College in Ellisville, Mississippi in a welding curriculum for a year and a half.

(2)

Defendant Transocean Deepwater Drilling, Inc., was the operator of the M/V TRANSOCEAN MARIANIS, a submersible drilling rig, at the time of the accident.

(3)

At all relevant times, Plaintiff was employed by the Defendant as a roustabout and a member of the crew aboard the M/V TRANSOCEAN MARIANIS.

(4)

Plaintiff typically worked with the same crew during his employment with Defendant. The roustabouts that Plaintiff typically worked with were Russell Culpepper, Eugene Rousso and Jerry Branton. This crew of roustabouts, including the Plaintiff, was supervised by Heath Thomas, a crane operator.

(5)

On June 2, 2005, the crew was in the process of moving drill pipe connectors, known as "subs," from the rig floor to the casing deck. The subs in questions are tubular pieces of pipe which were approximately four and a half feet long, eight inches in diameter and weighed approximately 600 pounds each. Subs are typically used as adaptors to connect together pipes of various diameters.

(6)

During this operation Heath Thomas, the crew's normal crane operator, had been relieved

by Richard Stanton.  Mr. Stanton served as the crane operator for this operation.

(7)

Two types of baskets are used to store subs.  One is a slotted basket which allows the subs to be placed vertically in the slots.  The other is an open basket which allows the subs to be stored horizontally.

When the subs are being lowered into a slotted basket, they are lowered one at a time with a cable attached to a lift cap which is screwed into the top of the sub.  When the sub is placed vertically into its slot, the lift cap is unscrewed from the sub and the line and the lift cap are pulled up and the lift cap is then made up to another sub and the process is repeated.

When the subs are lowered into an open basket, the subs are generally lowered in a horizontal position without lift caps.  When they come down to rest in the open basket the lines are unwrapped and send back up to be attached to another sub.

(8)

On the morning of the accident, subs were placed into a slotted basket until it was full. At that point the crane operator, Richard Stanton, instructed the Plaintiff to place the remaining subs in an open basket which already contained other equipment.  On the occasion in question, two subs were being lowered in a vertical position with lift caps attached.  The subs had some residual drilling mud on them.  The intent was to allow the subs to lean into the basket in a horizontal position.  As the subs were lowered into the open basket, one of the subs did not lay completely flush with the other equipment and it assumed a position which prevented the lift cap from being removed.  At that point, a decision was made to re-wrap the subs so that they could be lifted horizontally and then lowered and repositioned so that the lift caps could be removed.  As the Plaintiff was reaching to remove the sling so that the sub could be re-wrapped, one of the

-3-

subs moved and his hand was crushed between the subs.

(9)

The Plaintiff suffered a mid-shaft fracture of the fifth metacarpal on his right hand. He underwent surgery at East Jefferson General Hospital on June 7, 2005, which was performed by Dr. Eric George. Dr. George performed an open reduction and internal fixation of the fifth right metacarpal, which included the placement of a plate and screws. After the surgery, Dr. George recommended that the Plaintiff undergo therapy.

(10)

On July 18, 2005, Dr. George performed an extensor tenolysis of the metacarpal phalangeal ("MP") joint of the right small finger with a collateral ligament release of the MP joint of the right small finger. A tenolysis is the removal of scar tissue from the tendons. A collateral release is the removal of scar tissue from a joint. Dr. George again recommended that the Plaintiff undergo therapy.

(11)

In August of 2005, the Plaintiff returned to Dr. George. Dr. George noted that the Plaintiff suffered from a lot of stiffness and recommended a collateral release and a removal of the hardware. The Plaintiff obtained a second opinion from Dr. Constantine Charoglu on August 25, 2005. Dr. Charoglu opined that the Plaintiff required further therapy and that additional surgery was premature.

(12)

Dr. Charoglu saw the Plaintiff again on March 8, 2006. Dr. Charoglu opined that the Plaintiff had reached maximum medical improvement on March 1, 2006, and that the Plaintiff

would not benefit from further surgical intervention unless his pain became unbearable. Presently, the Plaintiff has some pain but describes it as being aggravating and not unbearable. He is not presently receiving medical care or taking any prescription pain medication.

(13)

At the time of his accident, the Plaintiff was 39 years of age. He had a 12th grade education and spent one and a half years at Jones Junior College studying welding. Prior to working from Transocean, the Plaintiff had a number of laboring jobs including working in the oilfield for Helmerich & Pain. The Plaintiff started working for the Defendant in September of 2004 and worked for them until his injury on June 2, 2005. He earned $13.26 per hour and worked 14 days on and 14 days off. His annual wage at the time of his injury was about $37,000. In June of 2006, the Plaintiff went to work as a host for Logan's Roadhouse in Hattiesburg, Mississippi. He earns $8.00 per hour and works 25 hours per week for an annual salary of $10,400.

(14)

As a result of his injury, the Plaintiff has permanent restrictions in the use of his right hand and cannot perform heavy lifting. He will not be able to do the work he was performing at the time of his injury. Nevertheless, he has vocational options available to him. He has a high school education with some junior college experience. He has performed skilled and semi-skilled work and has some supervisory experience. His education, experience and skills will enable him to secure full time employment and, in time, minimize and eliminate any future wage loss.

### III. CONCLUSIONS OF LAW

(1)

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which provides

original jurisdiction over admiralty or maritime claims, and the Jones Act, 46 U.S.C. § 688. Venue is proper because the Defendants are subject to the personal jurisdiction of this Court.

(2)

The matters before the Court includes determination as to whether the Defendant was negligent under the Jones Act, whether the Plaintiff is contributorily negligent, and whether the vessel was unseaworthy under general maritime law.

(3)

"A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997); *see also Howard v. Canadian Nat'l / Ill. Cent. R.R.*, No. 06-30747, 2007 WL 1541011 (5th Cir. May 24, 2007). An employer has the duty to provide his seaman employees with a reasonably safe place to work, including providing reasonably suitable gear. *See Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989). The cause of action under the Jones Act arises when this duty is breached and the employer's breach of duty is the "legal cause" of the seaman's injury. *Gavagan*, 955 F.2d at 1019-20.

(4)

In addition to a claim under the Jones Act, a seaman has a claim for injuries caused by the unseaworthiness of the vessel. "To establish a claim for unseaworthiness, the injured seaman must prove that the [vessel] owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it was intended to be used." *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service." *Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 339 (1955). "A vessel's

condition of unseaworthiness might arise from any number of circumstances.  Her gear might be defective, her appurtenances in disrepair, her crew unfit.  The number of men assigned to perform a shipboard task might be insufficient.  The method of loading her cargo, or the manner of its stowage, might be improper."  *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 517-18 (1971) (internal citations omitted); *see also Webb v. Dresser Indus.*, 536 F.2d 603, 606 (5th Cir. 1976), *cert. denied*, 429 U.S. 1211 (1977).  A vessel is unseaworthy when an unsafe method of work is used to perform vessel services.  *Rogers v. Eagle Offshore Drilling Serv.*, 764 F.2d 300, 303 (5th Cir. 1985); *Burns v. Anchor-Wate Co.*, 469 F.2d 730 (5th Cir. 1972).  The duty of the vessel owner to provide a seaworthy vessel is an absolute non-delegable duty.

To recover damages from an unseaworthy condition, the plaintiff is required to establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy.  *Id.*; *see also Gavagan v. United States*, 955 F.2d 1016, 1020 (5th Cir. 1992) (*quoting Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)) ("To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.")

(5)

A seaman has a duty under both the Jones Act and General Maritime Law to act as an ordinarily prudent seaman would act in the same or similar circumstances.  *Jackson*, 245 F.3d at 528; *Gautreaux*, 107 F.3d at 338-39; *see also Norfolk Southern Ry. Co. v. Sorrell*, 127 S. Ct. 799 (2007).  If a seaman's negligence contributes to his injury, his "contributory negligence will not bar his recovery, but may reduce the amount of damages owed proportionate to his share of fault."  *Jauch v. Nautical Services, Inc.*, 470 F.3d 201, 213 (5th Cir. 2006).

(6)

In this case, Transocean had a duty under the Jones Act to provide a reasonably safe means for the Plaintiff to perform his work, which was to load subs into a cargo basket. Transocean was negligent in failing to ensure that proper procedures were used for loading subs in the various baskets. Lowering two subs at once in a vertical position into a horizontal basket which also contained other equipment was an unsafe work procedure. The preferred method would have been to use a vertical basket. But, if an horizontal basket was to be used, one sub should have been lowered at a time and such sub should have been wrapped so that it could be lowered in a horizontal position without lift caps. There is no evidence to indicate that this negligence persisted for a sufficient period to render the vessel unseaworthy. *See, Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971).

(7)

The credible evidence supports the conclusion that the Plaintiff was also negligent and that his negligence was a contributing cause of his injuries. In an attempt to release the sling so that it could be repositioned on the sub, the Plaintiff negligently placed his hand in a pinch point. He could have signaled the crane operator to lift the sub and reposition it; he could have used a pry bar to move the sub into a better position in the basket; he could have placed a piece of dunnage between the subs so that if the sub was to move, his hand would not have been crushed. The Plaintiff's negligence contributed 50% to his injury. While this will not prevent him from recovering monetary damages, his damages will be reduced by 50%.

(8)

Under the Jones Act and General Maritime Law, a seaman is entitled to a monetary recovery for past, present and future loss of earning capacity and wages, medical expenses, and pain and suffering from an injury caused by negligence and/or unseaworthiness. *Nichols v.*

-8-

*Weeks Marine, Inc.*, 513 F. Supp. 2d 627, 637 (E.D. La. 2007).  *See also Johnson v. Cenac Towing,* Inc., 468 F. Supp. 2d 815, 835 (E.D. La. 2006).

(9)

The evidence supports the conclusion that the Plaintiff has an after-tax past loss of earnings of $64,000 and a future loss of earning capacity (after factoring in a period for retraining in a new position and after commuting to present value) of $35,000.  The Plaintiff is entitled to recover 50% of these sums.  The Defendant has paid the Plaintiff's past medical expenses pursuant to its maintenance and cure obligations. The Plaintiff has reached maximum medical cure and is not likely to need future medical care.

(10)

Damages for pain and suffering may be awarded to a seaman who is injured, in whole or in part, due to his employer's negligence.  The credible evidence supports the conclusion that the Plaintiff has suffered past mental and physical pain due to his injury and is likely to suffer some discomfort in the future.  The Court finds that he is entitled to an award of $50,000 for past pain and suffering and $10,000 for future discomfort.  The Plaintiff is entitled to recover 50% of these sums.

## IV.   PRE-JUDGMENT INTEREST

Pre-judgment interest may be awarded in admiralty cases if appropriate.  "Pre-judgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Jauch*, 470 F.3d at 214-15.  However, pre-judgment interest on future damages is not available. *Id.*  The starting date and rate of interest is left to the sound discretion of the Court.  *See Doucet v. Wheless Drilling Co.*, 467 F.2d 336, 340 (5th Cir. 1972); *Marathon Pipeline Co. v. M/V Sea Level II*, 806 F.2d 585, 593 (5th Cir. 1986), *reh'g denied* 811 F.2d 602 (1987).  The Court finds

that an award of pre-judgment interest is warranted on the Plaintiff's past wages and past pain and suffering.

## V.  CONCLUSION

On the above Findings of Fact and Conclusions of Law, the Court finds that the Plaintiff sustained damages due in part to the Defendant's negligence and in part to the Plaintiff's negligence.  Accordingly, the Plaintiff is entitled to recover the following damages from the Defendant:

(1)  Past Wage Loss: $64,000            reduced by 50% for a net total of $32,000

(2)  Future Wage Loss: $35,000          reduced by 50% for a net total of $17,500

(3)  Past Pain and Suffering: $50,000   reduced by 50% for a net total of $25,000

(4)  Future Pain and Suffering: $10,000 reduced by 50% for a net total of $5,000

Additionally, the Plaintiff is entitled to pre-judgment interest at the rate of 3% per annum on the above mentioned past losses from judicial demand and at the judicial rate from date of judgment on his future losses.

New Orleans, Louisiana, this 14th day of March, 2008.

_____
UNITED STATES DISTRICT JUDGE